Granger, C. J.
At least two parties are necessary to a *200 contract.» A vendee cannot be his own vendor. So vital is this principle that the same person cannot be in one transaction, the agent of both vendor and vendee unless both know the fact and consent thereto. If a vendor secretly bribe the agent of the vendee, and induce him to deceive his principal in a matter material to the sale, the vendee’s right, on discovery of the fraud, to a rescission is undoubted.
Persons may be partners in a single transaction as well as in a business. In either case their rights and duties, as between themselves, are the same. Neither, without the knowledge and consent of his partners, can act as agent for a third party in a contract with the firm. All have a right to share in all that each one knows material to the transaction in which they are partners. Each has a right to expect that his co-partners will act for and not against the joint interest in all affairs of the firm. If a third party corrupts one of them so that he plays the part of a stool pigeon to beguile hjs fellows into a contract damaging to their interests, and thejr, on discovery, elect to rescind it, and ask aid of a court of equity, it will unhesitatingly compel the fraudulent contractor to restore, all that he received from the defrauded parties. Fraud is ever assuming new forms. But, happily, equity principles are so capable of varied application, that our courts are able to furnish relief against cheats of the newest invention. The act of Lasley in giving the two options to Wells needs no interpreter. Its purpose was to enable Wells to deceive persons whom, as he told Lasley, he desired to induce to form a partnership with him in the purchase and sale of the farm. The contract of purchase, when written, was notice to Lasley that such partnership had been formed. He knew substantially what Wells had represented about the land to his co-purchasers. He in their presence acted as if Wells was really the active partner of Yeoman and the others, but, in secret, he paid Wells as his own agent in effecting the sale. So great was his interest and zeal in concealing Wells’ real position from the others, that instead of con *201 tenting himself with taking Wells’ notes for his share of the first and second year’s payments, and then privately returning them to Wells (as he could easily have done), he gave Wells his (Lasley’s) own notes for similar amounts, which Wells sold to others to whom Lasley made payment. This in effect was paying to Wells the difference between the price of the land at $70 and at $85 per acre before Lasley had been paid his share of the price. It was consistent with the theory of the plaintiffs in error, and inconsistent with Lasley’s claims. It was treating Wells as Lasley’s agent entitled to his commission as soon as he had effected the sale. These acts, like the giving of the two options, tell their own story. They can have but one meaning. Hence Lasley’s testimony that he did not intend to deceive; — nor that the $70 option should be kept secret; —and that the secret credit and refunding, and the exchange of notes with Wells, were not intended to conceal Wells’ real position in the matter, was manifestly false. The fraud was successful. Yeoman, Milbur'n and the Welches were induced to believe that the valuable stratum of coal underlaid the larger part of the land and in that belief to join in the purchase. It matters not what name we give to the part played by Wells. Lasley knowingly aided him in playing that part for the purpose of fraudulently inducing the other parties to buy, and accomplished his purpose. Lasley, by counsel, claims that the settlement with the Cleveland Comjjany was either a ratification of the purchase from him, or estops Yeoman and his associates from asking a rescission. Neither claim is valid. Before they could demand of Lasley a return of their money an offer by them to reconvey the entire title to the land was necessary. This could not be effectively made until the rights of the Cleveland Company in the lands were extinguished. Hence to obtain a reconveyance, or relinquishment, of those rights was the first step in the direction of a rescission of the contract with Lasley, and did not tend at, all in the direction of a ratification of that contract.
*202 Lasley did nothing, and had no right to do anything, because of the adjustment with the Cleveland Company that could work an estoppel against the purchasers from him. He- could have no possible concern with that adjustment unless in an inquiry of damages under a suit by his purchasers to recover for his fraud, when, perhaps, the pi'ofit, if any, realized by them from this transaction with the Cleveland Company could be computed as a credit item to him lessening the amount of damages that they could recover’.
. On Lasley’s behalf it is urged that a decree for Yeoman et al., leaving in their hands the $9,000 paid by the Cleveland Company, would be so contrary to equitable principles that it should be denied. A statement of the facts, as shown by this record, sufficiently shows that this claim is. unsound.
Unless Yeoman et al. had by fraud induced the Cleveland Company to buy, that company was indebted to them in the sum of over $25,000. Yeoman et al. surrendered all claim to this indebtedness and assxxmed the cost and risk of litigation with Lasley. The bixrden was on the Cleveland Company to prove such fraud as would defeat their vendors in the suit then ready for trial. Knowing what evidence was at their command, the company offered to surrender the land and the $9,000, ixx order to make a sure escape from all danger of a judgment against them for more than $25,000, and their offer was accepted. The company could not have availed itself of the fraud of Lasley and Wells in the sale to Yeoman et al. But by the arrangement actually made it received a benefit equal to the difference between the actual valúe of 333 acres of land unsuitable for their use and the $25,000. The settlement was substantially a re-sale of their half of the land at over $75 per acre. The contract of settlement was made by parties fully competent to take care of themselves and we have no evidence that any deceit was used ixx securing the consent of either party.
Be that as it may, a fraudulent vendor will not be permitted to show that his vendees have committed a fraud *203 upon some third party. If they have done no wrong to him he cannot rightfully complain.
Wells’ complicity in the fraud is urged as good reason for refusing a decree of rescission. But equity will not refuse to aid his innocent co-purchasers because of a fraud committed on them by him. If their rights cannot be secured without to some extent relieving him, the innocent, must not suffer.
We reverse the judgments of the district court and common pleas .and render a decree for Yeoman, Milburn, John Welch and Johnson M. Welch rescinding the contract with Lasley, directing them and Wells to reconvey the land to Lasley, upon a return by him to them of the purchase money (paid by them) with interest from the time or times when paid; enjoining Lasley’s suits against all except Wells;— placing all costs on Lasley and providing for proper orders of sale or for executions to enforce payment by him.